IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| NOVO NORDISK A/S, | ) ) ) ) | |
| Plaintiff and Counterdefendants, | ) ) | C.A. No. 05-645-SLR |
| v. | ) ) ) | |
| SANOFI-AVENTIS, AVENTIS PHARMACEUTICALS INC., and AVENTIS PHARMA DEUTSCHLAND GMBH | ) ) ) ) ) | |
| Defendants and Counterplaintiffs. | ) ) ) | |

## AVENTIS'S SECOND NOTICE OF DEPOSITION TO NOVO NORDISK A/S PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Aventis Pharmaceuticals Inc., sanofi-aventis, and sanofi-aventis Deutschland GmbH (referred to collectively as "Aventis") shall take the deposition of Plaintiff Novo Nordisk A/S ("Novo") through the person(s) designated by Novo to testify on its behalf with respect to the subjects set forth in Exhibit A. The deposition will commence at 9:00 a.m. on October 25, 2006 at the offices of McDonnell Boehnen Hulbert & Berghoff, LLP, 300 South Wacker Drive, Chicago, Illinois 60606 or at a time and place to be mutually agreed upon by counsel. The deposition will be recorded by stenographic means, may be videotaped, and will take place before a Notary Public or other officer duly authorized to administer oaths and will continue from day to day until concluded.

You are invited to attend and cross-examine.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for Defendants*

*Of Counsel:*

Paul H. Berghoff
Curt J. Whitenack
Thomas E. Wettermann
James M. McCarthy
Eric R. Moran
McDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois  60606
(312) 913-0001

Dated: October 17, 2006
174269.1

## **EXHIBIT A**

In the following subjects:

1. The terms "Plaintiff" and "Novo" shall mean the Plaintiff in this lawsuit, Novo Nordisk A/S; any company name under which Novo is doing business; and its predecessors, parents, subsidiaries, divisions, directors, officers, employees, agents, distributors, salespersons, sales representatives, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

2. The terms "Defendant" and "Defendants," shall mean Aventis Pharmaceuticals, Inc., sanofi-aventis S.A., or sanofi-aventis Deutschland GmbH, both individually and collectively; any company name under which Aventis Pharmaceuticals, Inc., sanofi-aventis S.A., or sanofi-aventis Deutschland GmbH is doing business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control.

3. The terms "person" and "persons" shall mean natural persons (including, without limitation, those employed by Novo), as well as all governmental entities, agencies, officers, departments, or affiliates of any other governmental entity, legal entity, and any corporation, foundation, partnership, proprietorship, association, or other organization.

4. The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or, if not ascertainable, the best approximation (including relationship to other events).

5. The term "document" shall mean writings, recordings and other communications reduced to physical or electronic form, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including

3

without limitation, correspondence, memoranda, notes, e-mail, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, prospectuses, calendars, diaries, planners, interoffice and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, meetings, or printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs, and recordings).

6. The terms "relating to" and "referring to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Federal Rule of Civil Procedure 26(b).

7. The terms "identify" and "describe" shall mean providing, among other things:

(a) with respect to a natural person, home and work addresses and telephone numbers, the name of the person's present (or if unknown, the last known) place of employment, date of commencement and termination (if any) of employment, job title, and description of his or her duties and responsibilities;

(b) with respect to a corporation or other non-natural person, the full name, address, main telephone number, state of incorporation, and identity of all persons who have acted on behalf of such entity with respect to the subject matter of the interrogatory;

(c) with respect to a document, the type of document (e.g., letter, e-mail, telex, contract, calendar, invoice, report); the number of pages; a description of the document's contents; an identification of the person(s) who prepared the document, for whom the document was prepared, who

signed the document, to whom the document was delivered, mailed, or otherwise received, and to whom a copy of the document was sent or otherwise received; the date of writing, creation, or publication; identifying number(s), letter(s), or combination thereof, if any; the significance or meaning of such numbers(s), letter(s) or combination thereof; and the present location and identity of the custodian of that document. Documents to be identified shall include all documents in your possession, custody or control, documents you know or believe to have existed but are no longer existing, and other documents of which you have knowledge or information.

8. The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9. The terms "describe" and "state" shall mean to set forth fully and unambiguously every relevant fact of which Novo (including its agents and representatives) has knowledge or information.

10. Any word written in the singular herein shall be construed as plural or vice versa to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

11. "Insulin Pen Injectors" shall mean medical devices of the type depicted generally and specifically in the '408 patent, sold, distributed, or marketed by Novo or others, as the case may be, including but not limited to the FlexPen, NovoPen, NovoPen 1, NovoPen 2, NovoPen 3, NovoPen 4, NovoPen Junior, InnoLet, NovoLet, Innovo, and InDuo devices.

12. "Other Insulin Delivery Devices" shall mean any medical device other than an Insulin Pen Injector, sold, distributed, or marketed by Novo or others as the case may be, for the purpose of delivering insulin to a patient in need of insulin, including but not limited to traditional syringes.

13.     "Insulin Products" shall mean insulin formulations sold, distributed or marketed by Novo or others, as the case may be, and intended for administration to diabetic patients.

**The subjects for examination at the Rule 30(b)(6) deposition shall include:**

1. Novo's marketing strategy with respect to Novo's insulin pen injectors, Novo's Other Insulin Delivery Devices and Novo's sales of Insulin Products.

2. Novo's estimates of the size of market for Insulin Pen Injectors and the size of market for Insulin Products overall, regardless of delivery device.

3. Any factors that drive or affect sales of Novo's Insulin Products and Insulin Pen Injectors, including any features of Novo's Insulin Pen Injectors that drive sales of such Insulin Pen Injectors; any features of Novo's Insulin Pen Injectors that are the focus of Novo's marketing efforts; any features of Novo's Insulin Pen Injectors that are identified by Novo's customers as reasons for purchasing Novo Insulin Pen Injectors; any features or attributes of Novo's Insulin Products that drive sales of Novo's Insulin Products; and the importance of Insulin Pen Injectors and Other Insulin Delivery Devices in the sale of Insulin Products.

4. Novo's competitors, including an identification of competitors that provide Insulin Pen Injectors and/or Insulin Products; Novo's position in the market vis-à-vis competitors that provide Insulin Pen Injectors and/or Insulin Products; market share data for Novo and competitors that provide Insulin Pen Injectors and/or Insulin Products (historical and current); and Novo's marketing strategy for competing with other companies that provide Insulin Pen Injectors and/or Insulin Products.

5. Products that compete with Novo's Insulin Pen Injectors, including Insulin Pen Injectors and Other Insulin Delivery Devices offered by Novo's competitors; Novo's evaluation of Insulin Pen Injectors and Other Insulin Delivery Devices offered by Novo's competitors; differences and similarities between Novo's Insulin Pen Injectors and Insulin Pen Injectors offered by Novo's

7

competitors; benefits and weaknesses of Novo's Insulin Pen Injectors compared to Insulin Pen Injectors and Other Insulin Delivery Devices offered by Novo's competitors; and Novo's marketing strategy with regard to communicating benefits and weakness of its Insulin Pen Injectors to the market.

6. Products that compete with Novo's Insulin Products, including Insulin Products offered by Novo's competitors; Novo's evaluation of Insulin Products offered by Novo's competitors; differences and similarities between Novo's Insulin Products and Insulin Products offered by Novo's competitors; benefits and weaknesses of Novo's Insulin Products compared to Insulin Products offered by Novo's competitors; and Novo's marketing strategy with regard to selling Insulin Products to the market.

7. Novo's customers, including Novo's targeted market for Insulin Pen Injectors and Insulin Products (e.g. physicians, patients, pharmacies, etc.); entities to which Novo sells Insulin Pen Injectors and Insulin Products; customers allegedly lost to Aventis and any reasons why Novo believes such customers were lost; customers who allegedly switched from using Novo Insulin Products to Aventis Insulin Products; and marketing efforts allegedly required by Novo to keep customers from switching from Novo Insulin Products to Aventis for Insulin Pen Injectors and Insulin Products

8. Novo's accounting data, including unit and dollars sales of Novo's Insulin Products, Insulin Pen Injectors, and Other Insulin Delivery Devices; profitability of Novo's Insulin Products, Insulin Pen Injectors, and Other Insulin Delivery Devices; costs associated with Novo's Insulin Products, Insulin Pen Injectors, and Other Insulin Delivery Devices; direct costs, including standard costs and variances, division overhead, including a breakdown of fixed and variable costs; selling, general and

8

administrative costs, including a breakdown of fixed and variable costs; identification of how fixed and variable costs might change with changes in volume; and methods for accumulating and tracking actual sales and costs associated with Novo's Insulin Pen Injectors and Insulin Products.

9. Novo's sales, including the organization of Novo's selling function; Novo's salesperson compensation and commission structure; the capacity of Novo's sales and marketing groups to sell additional Insulin Pen Injectors and Insulin Products; Novo's business plans, budgets, forecasts, strategic plans or other plans related to the manufacture of Insulin Pen Injectors and Insulin Products; and Novo's distribution structure and channels for Insulin Pen Injectors and Insulin Products.

10. Novo's manufacturing capacity, including an explanation of Novo's process for manufacturing Insulin Pen Injectors and Insulin Products; Novo's actual and potential capacity for manufacturing Insulin Pen Injectors and Insulin Products; location(s) of facilities where Novo produces Insulin Pen Injectors and Insulin Products; the amount of building space occupied/available at facilities where Novo produces Insulin Pen Injectors and Insulin Products; the number of shifts run at Novo's manufacturing facilities where Insulin Pen Injectors and Insulin Products are produced; the availability of skilled labor; the equipment required to manufacture Novo's Insulin Pen Injectors and Insulin Products; the capacity available on equipment required to manufacture Novo's Insulin Pen Injectors and Insulin Products; an identification of raw material and component part suppliers to Novo for use in producing its Insulin Pen Injectors and Insulin Products; available capacity for Novo's suppliers to provide additional supplies to Novo for Novo's production of Insulin Pen Injectors and Insulin Products; an identification of capacity constraints that Novo would experience in order to increase its production of Insulin Pen Injectors and Insulin Products; costs to Novo of adding additional capacity to produce additional Insulin Pen Injectors and Insulin Products;

9

any plans by Novo to add capacity to produce additional Insulin Pen Injectors and Insulin Products; and Novo's inventory of Insulin Pen Injectors and Insulin Products.

11. Novo's licensing practices, including Novo's historical licensing activity and practices; any licenses entered into by Novo for technology related to Insulin Pen Injectors and/or Other Insulin Delivery Devices; royalty rates received by, or paid by, Novo for licenses relating to Insulin Pen Injectors or Other Insulin Delivery Devices; licensing practices in the industry for technology related to Insulin Pen Injectors or Other Insulin Delivery Devices; and valuation of patents relating to Insulin Products, Insulin Pen Injectors and/or Other Insulin Delivery Devices for licensing or other purposes.

**EXHIBIT B**

DEFINITIONS

All definitions set forth in Exhibit A above are incorporated as if set forth fully herein.

INSTRUCTIONS

All instructions set forth in Aventis's previous document requests are incorporated as if set forth fully herein.

DOCUMENT REQUEST

1.     All documents that have been referred to by Novo in preparing for this deposition or that are the source of information that Novo expects to provide in response to this deposition notice.

# CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2006, the attached **AVENTIS'S SECOND NOTICE OF DEPOSITION TO NOVO NORDISK A/S PURSUANT TO RULE 30(b)(6)** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 | <u>HAND DELIVERY</u> |
| Jeffrey J. Oelke, Esquire<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036-2787 | <u>VIA FEDERAL EXPRESS</u> |

*/s/ Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon