IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVO NORDISK A/S,<br><br>    Plaintiff and Counterdefendant,<br><br>v.<br><br>AVENTIS PHARMACEUTICALS INC., SANOFI-AVENTIS, and AVENTIS PHARMA DEUTSCHLAND GMBH,<br><br>    Defendants and Counterplaintiffs. | Case. No. 1:05CV00645 SLR |

**NOVO NORDISK'S FIRST NOTICE OF DEPOSITION PURSUANT
TO RULES 30(b)(6) AND 30(b)(5) OF AVENTIS PHARMACEUTICAL INC.,
SANOFI-AVENTIS, AND AVENTIS PHARMA DEUTSCHLAND**

To:  Steven J. Balick, Esquire            Paul Berghoff, Esquire
     John G. Day, Esquire                 McDonnell Boehnen Hulbert
     Lauren E. Maguire, Esquire           & Berghoff LLP
     222 Delaware Avenue, 17th Floor      300 South Wacker Drive
     P.O. Box 1150                        Chicago, Illinois 60606-6709
     Wilmington, DE  19899

PLEASE TAKE NOTICE that Plaintiff Novo Nordisk A/S, pursuant to Rules 30(b)(6) and 30(b)(5) of the Federal Rules of Civil Procedure, will take the deposition upon oral examination under oath of Defendants, Aventis Pharmaceutical Inc., Sanofi-Aventis, and Aventis Pharma Deutschland at 9:30 a.m. on November 1, 2006, at the offices of White & Case LLP, at 1155 Avenue of the Americas, New York, New York 10036, or at such other time and place to be agreed upon. If the deposition is not completed on the agreed-upon day, it will continue until completed with such adjournment as to time and place as may be necessary.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants shall designate one or more officers, directors, employees or other persons who will

)
RLF1-3072856-1

testify on their behalf on the matters listed in Schedule A attached hereto. Pursuant to Rule 30(b)(5) of the Federal Rules of Civil Procedure, Defendants shall produce the documents and things described in Schedule B attached hereto no later than November 1, 2006 at 9:30 a.m.

The deposition(s) will be taken before a qualified notary public or before some other officer authorized by law to administer oaths. The deposition(s) will be recorded by stenographic, video and/or audio graphic means.

|  |  |
|---|---|
| OF COUNSEL:<br>Jeffrey J. Oelke<br>Scott T. Weingaertner<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, N.Y. 10036-2787<br>Telephone: (212) 819-8200 | /s/ Anne Shea Gaza<br>Frederick L. Cottrell, III (#2555)<br>cottrell@rlf.com<br>Anne Shea Gaza (#4093)<br>gaza@rlf.com<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>Wilmington, Delaware 19801<br>Telephone: (302)651-7700<br>*Attorneys for Plaintiff* |

Dated: October 20, 2006

## DEFINITIONS

1. The definitions recited in NOVO NORDISK A/S' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO SANOFI-AVENTIS, AVENTIS PHARMACEUTICALS AND AVENTIS PHARMA DEUTSCHLAND GMBH (NOS. 1—57), served January 27, 2006 (hereinafter "Novo Nordisk's Document Requests") are incorporated herein by reference.

2. "Aventis's First Supplemental Interrogatory Responses" means Aventis First Supplemental Response to Novo Nordisk's First Set of Interrogatories (Nos. 1 - 3), dated June 9, 2006.

3. "Opinion" shall mean the written opinion with regard to the '408 patent issued to Aventis by McDonnell, Boehnen, Hulbert & Berghoff LLP on September 13, 2005.

4. "Competency Opinion" shall mean the written opinion with regard to the competency of the Opinion issued by Myers, Bigel, Sibley & Sajovec, P.A on February 17, 2006.

5. "MBHB" shall mean collectively, all attorneys at McDonnell, Boehnen, Hulbert & Berghoff LLP responsible for communicating with Aventis as to the opinion at issue, all attorneys responsible for researching the underlying basis for the opinion, and all employees or people working under the direction of any attorney at McDonnell, Boehnen, Hulbert & Berghoff LLP working toward the issuance of the opinion.

6. "MBSS" shall mean collectively, all attorneys at Myers, Bigel, Sibley & Sajovec, P.A. responsible for communicating with Aventis as to the opinion at issue, all attorneys responsible for researching the underlying basis for the opinion, and all

employees or people working under the direction of any attorney at Myers, Bigel, Sibley & Sajovec, P.A working toward the issuance of the opinion.

7. As used herein, "cartridge system" and "OptiClik pen body" shall have the same meaning as used by Aventis in the OptiClik instruction leaflet. See, e.g., SAN00000011-SAN00000022.

8. As used herein, "cartridge" shall have the meaning as used by Aventis on OptiClik product packaging. See, e.g., SAN00063817.001.

9. "OptiClik" as used herein shall mean the combination of the OptiClik pen body with any cartridge system or cartridge used with the OptiClik pen body.

The topics for examination shall include:

1. The circumstances of Aventis's initial awareness of the patent-in-suit and its foreign counterparts, or any other patent or patent application related to the patent-in-suit, including but not limited to EP 1 094 858, including any knowledge or awareness of the '408 patent gained during the European Opposition to EP 1 094 858.

2. The facts and circumstances, documents and evidence regarding any discussion or communication with MBHB or MBSS concerning the validity, infringement or unenforceability of the '408 patent or the competency of the Opinion.

3. The facts and circumstances, documents and evidence regarding the steps Aventis took to avoid infringement of the '408 patent, including all steps taken by Aventis once Aventis learned of the existence of the '408 patent and all steps taken after Aventis was provided with any opinion of counsel, including but not limited to all discussions or consideration of altering the design of OptiClik or any component of OptiClik, including the OptiClik pen body, cartridges, or cartridge systems used with OptiClik.

4. The facts, circumstances, documents and evidence regarding dissemination of any opinion of counsel, whether oral or written, within, by or between any person or persons at Sanofi-Aventis, Aventis Pharma Deutschland GMbH, Sanofi Aventis Pharma Deutschland GMbH, Aventis Pharmaceuticals, Inc., Ypsomed or Disetronic; the identity and role of all persons involved in any decision to obtain or not obtain an opinion of counsel regarding infringement, invalidity or unenforceability of the '408 patent; and, the identity of all persons that were provided with any opinion of counsel, in either oral or written form.

5. The facts, circumstances, documents and evidence regarding Aventis's decision to obtain an opinion regarding the competency of the Opinion, including all persons, whether outside counsel or employed by Aventis, involved in the decision to obtain the Competency Opinion.

6. The facts, circumstances, documents and evidence regarding evaluation of the competency of the Opinion both before and after Aventis obtained the Competency Opinion, including the identity of all persons, whether outside counsel or employed by Aventis, that were involved in evaluating the competency of the Opinion.

7. The facts, circumstances, documents and evidence regarding any communication with Ypsomed or Disetronic regarding infringement, validity or enforceability of the '408 patent, including, but not limited to, all communications regarding any opinion of counsel concerning the '408 patent or press release regarding this litigation, any opinion obtained by Ypsomed, and the persons at Aventis to whom any opinion concerning the '408 patent was communicated.

8. The facts, circumstances, documents and evidence regarding any communications between Ypsomed and Aventis, or between any person at Ypsomed and any person at Aventis, including any officer, executive or employee of either Ypsomed or Aventis, regarding Aventis's future use, sale, offer for sale, distribution or supply of OptiClik and/or the OptiClik pen body, or regarding Ypsomed's future manufacture or supply of OptiClik or the OptiClik pen body to Aventis, and the identify of the persons whom the communications were between, the identity of any person that was present at the time of the communication either in person or by teleconference, and the identity of any person that received notice of any communication.

9.  For OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems, insulin and insulin formulations, including Lantus and Apidra, the volume sold or distributed by Defendants or their licensees, including the units provided free of charge, the units of direct sales and units of licensed sales, the net revenue derived by Defendants on such sales, Defendants' dollar sales, Defendants' gross margin, Defendants' cost of sales, Defendants' operating costs, and Defendants' net and operating profits and gross margins.

10. Aventis's licensing practices and policies regarding technology related to insulin delivery devices, pen-type insulin delivery devices, insulin or insulin formulations, including Lantus and Apidra; all license agreements, entered into by any Defendant as licensee or licensor for technology related to insulin delivery devices, pen-type insulin delivery devices, or insulin or insulin formulations, including those agreements that concern OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems, or any part of component thereof, Lantus and Apidra; including the parties to such agreements, the effective date of such agreements, the terms of such agreements (including a description of the subject matter of the agreements, whether or not such agreements are exclusive, and the geographical scope of such agreements), the duration of such agreements, up-front payments, the applicable royalty rates and any other payment terms; and identify the persons involved in the negotiation and execution of any such agreement; licensing practices in the industry regarding insulin delivery devices, insulin or insulin products.

11. The pricing policy and pricing structure for OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges and Apidra cartridge

systems, Lantus and Apidra (on an annual basis for each product); and the persons most knowledgeable about these policies and structures.

12. The relationship between Defendants' sale or distribution of the OptiClik pen body and sales of other products or services by the Defendants (including the sale of Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems, Lantus or Apidra for use with the OptiClik pen body) and the extent of such derivative or other convoyed sales, including the unit sales, net revenue and gross margins related to such derivative or other convoyed sales.

13. The commercial relationship between each defendant and any other defendant in this action, and the commercial relationship between any defendant and Ypsomed, and the financial terms and royalty rates paid by any defendant to any other defendant or to Ypsomed in connection with the supply or sale of insulin delivery devices, pen-type insulin delivery devices, insulin or insulin formulations, including, but not limited to, OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems, Lantus or Apidra or any component or part of OptiClik or the cartridge systems used with the OptiClik pen body.

14. Aventis's plans regarding future sale or distribution in the United States of OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apridra cartridges, Apidra cartridge systems, Lantus and Apidra, including whether or not Aventis has plans or intentions to phase out or discontinue sale or distribution of OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges or Apidra cartridge systems, whether Aventis plans or intends to replace

OptiClik or the OptiClik pen body with another delivery device, including but not limited to Autopen 24 or Solostar.

15. Competition in the marketplace for insulin pens and insulin products; the products that compete with OptiClik, Lantus and Apidra; the market share of OptiClik, Lantus and Apidra, and the market share of each product that competes with OptiClik, Lantus and Apidra; the identity of any devices or products that Aventis alleges are non-infringing alternatives to OptiClik.

16. The factors that affect the demand for insulin delivery devices, including OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, and Apidra cartridge systems, and/or any other insulin delivery device or insulin product or formulation, including Lantus and Apidra; the channels of distribution for insulin delivery devices including the channels of distribution for OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, and Apidra cartridge systems, and other Aventis insulin products or formulations, including Lantus and Apidra; the identity of customers (physicians, patients, pharmacies, etc.) for OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems, and Aventis's insulin products and insulin formulations, including Lantus and Apidra, and any product that competes with OptiClik; the marketing, advertising, and sales force activities of Aventis with respect to OptiClik, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems and Aventis's insulin products or formulations, including Lantus and Apidra.

17. Sales forecasts that Aventis prepared for the OptiClik and insulin products, including OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge

systems, Apidra cartridges, Apidra cartridge systems, and Aventis's insulin products and insulin formulations, including Lantus and Apidra, from January 1, 2004 to present.

18. Aventis's accounting data and financial reporting system and the content and meaning of the financial documents that Aventis has produced during discovery; all costs associated with OptiClik, the OptiClik pen body, Lantus cartridges, Lantus cartridge systems, Apidra cartridges, Apidra cartridge systems, Aventis insulin products and formulations, including Lantus and Apidra, and how Aventis allocates those costs.

19. Aventis's estimate of the size of the market for insulin delivery devices, for pen-type insulin delivery devices, including, but not limited to, disposable, durable or semi-disposable pen-type delivery devices, and for insulin products, regardless of the delivery device.

## SCHEDULE B

1.  All documents that have been referred to by Aventis in preparing for this deposition including all documents that are the source of information that Aventis expects to provide in response to this deposition notice.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Lauren E. Maguire, Esquire
> 222 Delaware Avenue, 17th Floor
> P.O. Box 1150
> Wilmington, DE 19899
> 302-654-1888

I hereby certify that on October 20, 2006, I have sent by Federal Express the foregoing document to the following non-registered participants:

> Paul Berghoff, Esquire
> McDonnell Boehnen Hulbert
> & Berghoff LLP
> 300 South Wacker Drive
> Chicago, Illinois 60606-6709

*Anne Shea Gaza*
Anne Shea Gaza (#4093)
Gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 651-7700

RLF1-2926952-1