IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVO NORDISK A/S, ) | |
| ) | |
| Plaintiff and Counterdefendants, ) | |
| ) | |
| v. ) | C.A. No. 05-645-SLR |
| ) | |
| SANOFI-AVENTIS, AVENTIS ) | |
| PHARMACEUTICALS INC., and AVENTIS ) | |
| PHARMA DEUTSCHLAND GMBH ) | |
| ) | |
| Defendants and Counterplaintiffs. ) | |

## AVENTIS'S THIRD NOTICE OF DEPOSITION TO NOVO NORDISK A/S PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Aventis Pharmaceuticals Inc., sanofi-aventis, and sanofi-aventis Deutschland GmbH (referred to collectively as "Aventis") shall take the deposition of Plaintiff Novo Nordisk A/S ("Novo") through the person(s) designated by Novo to testify on its behalf with respect to the subjects set forth in Exhibit A. The deposition will commence at 9:00 a.m. on November 10, 2006 at the offices of McDonnell Boehnen Hulbert & Berghoff, LLP, 300 South Wacker Drive, Chicago, Illinois 60606 or at a time and place to be mutually agreed upon by counsel. The deposition will be recorded by stenographic means, may be videotaped, and will take place before a Notary Public or other officer duly authorized to administer oaths and will continue from day to day until concluded.

You are invited to attend and cross-examine.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*
_____
Steven J. Balick (I.D. #2403)
John G. Day (I.D. 2114)
Lauren E. Maguire (I.D. #4261)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.c\
lmaguire@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Paul H. Berghoff
Curt J. Whitenack
Thomas E. Wettermann
James M. McCarthy
Eric R. Moran
McDONNELL BOEHNEN
  HULBERT & BERGHOFF LLP
300 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 913-0001
Fax: (312) 913-0002

Dated: November 2, 2006
174797.1

# **EXHIBIT A**

In the following subjects:

1.      The terms "Plaintiff" and "Novo" shall mean the Plaintiff in this lawsuit, Novo Nordisk A/S; any company name under which Novo is doing business; and its predecessors, parents, subsidiaries, divisions, directors, officers, employees, agents, distributors, salespersons, sales representatives, and attorneys, and each person acting or purporting to act on its or their behalf or under its or their control.

2.      The terms "Defendant" and "Defendants," shall mean Aventis Pharmaceuticals, Inc., sanofi-aventis S.A., or sanofi-aventis Deutschland GmbH, both individually and collectively; any company name under which Aventis Pharmaceuticals, Inc., sanofi-aventis S.A., or sanofi-aventis Deutschland GmbH is doing business; and its predecessors, parents, subsidiaries, divisions, licensees, franchisees, assigns or other related business entities, as well as directors, officers, employees, agents, distributors, jobbers, salespersons, sales representatives, and each person acting or purporting to act on its or their behalf or under its or their control.

3.      The terms "person" and "persons" shall mean natural persons (including, without limitation, those employed by Novo), as well as all governmental entities, agencies, officers, departments, or affiliates of any other governmental entity, legal entity, and any corporation, foundation, partnership, proprietorship, association, or other organization.

4.      The term "date" shall mean the exact day, month, and year (to the degree ascertainable) or, if not ascertainable, the best approximation (including relationship to other events).

5.      The term "document" shall mean writings, recordings and other communications reduced to physical or electronic form, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or otherwise (including

1

without limitation, correspondence, memoranda, notes, e-mail, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, prospectuses, calendars, diaries, planners, interoffice and intra-office communications, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, meetings, or printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs, and recordings).

6. The terms "relating to" and "referring to" shall be interpreted so as to encompass the liberal scope of discovery set forth in Federal Rule of Civil Procedure 26(b).

7. The terms "identify" and "describe" shall mean providing, among other things:

(a) with respect to a natural person, home and work addresses and telephone numbers, the name of the person's present (or if unknown, the last known) place of employment, date of commencement and termination (if any) of employment, job title, and description of his or her duties and responsibilities;

(b) with respect to a corporation or other non-natural person, the full name, address, main telephone number, state of incorporation, and identity of all persons who have acted on behalf of such entity with respect to the subject matter of the interrogatory;

(c) with respect to a document, the type of document (e.g., letter, e-mail, telex, contract, calendar, invoice, report); the number of pages; a description of the document's contents; an identification of the person(s) who prepared the document, for whom the document was prepared, who

2

signed the document, to whom the document was delivered, mailed, or otherwise received, and to whom a copy of the document was sent or otherwise received; the date of writing, creation, or publication; identifying number(s), letter(s), or combination thereof, if any; the significance or meaning of such numbers(s), letter(s) or combination thereof; and the present location and identity of the custodian of that document. Documents to be identified shall include all documents in your possession, custody or control, documents you know or believe to have existed but are no longer existing, and other documents of which you have knowledge or information.

8. The terms "and," "or," and "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

9. The terms "describe" and "state" shall mean to set forth fully and unambiguously every relevant fact of which Novo (including its agents and representatives) has knowledge or information.

10. Any word written in the singular herein shall be construed as plural or vice versa to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

11. The term "the '408 patent" shall mean U.S. Patent No. 6,582,408.

12. The term "patent-in-suit" shall mean the '408 patent.

13. "Complaint" means the Complaint filed by Novo in the United States District Court for the District of Delaware, on or about September 2, 2005, and the First Amended Complaint filed by Novo in the United States District Court for the District of Delaware, on or about September 26, 2005.

14. "Reply" means the Reply filed by Novo in the United States District Court for the District of Delaware, on or about October 31, 2005, and the Reply filed by Novo in the United States District Court for the District of Delaware, on or about January 3, 2006.

3

15.   The term "Prior Art" shall mean: (1) any patent or printed publication dated, published, or issued before July 8, 1999; (2) any device made, used, sold, offered for sale, or distributed anywhere, including the United States, before July 8, 1999; (3) any published patent application filed before July 8, 1999, to the extent such reference discloses or pertains to any device (reusable or non-reusable), and any components of such a device, used to deliver medication, insulin, or other fluid via injection, including, but not limited to, the medical devices of the type depicted generally and specifically in the '408 patent and the OptiClik® device.

16.   The term "Medication Delivery Device" shall mean any pen-type device (reusable or non-reusable), and any components of such a device, used to deliver medication, insulin, or other fluid via injection, including, but not limited to, the medical devices of the type depicted generally and specifically in the '408 patent and the OptiClik® device.

17.   The '011 patent shall mean U.S. Patent No. 6,562,011.

18.   The '408 patent shall mean U.S. Patent No. 6,582,408.

**The subjects for examination at the Rule 30(b)(6) deposition shall include:**

1. For the time periods beginning a year before the alleged conception of each of the alleged inventions of the '011 and the '408 patents until the present, the organizational structure of the departments involved in the development of each of the alleged inventions, the physical locations where individuals in those departments were/are housed, the manner and location in which those departments maintain(ed) documents, and the document retention policies/procedures of those departments.

2. The identity of each individual who was involved in any way with the conception, design, development, reduction to practice, testing, examination, evaluation, or consideration of the alleged inventions of the '011 and '408 patents, the nature of each such person's involvement, and the extent to which the files of such persons have been searched for documents responsive to each of sanofi-aventis's document requests.

3. The manner and extent to which Novo follows and/or keeps track of medication delivery device Prior Art and developments of others in the medication delivery device field.

4. The nature and extent of Novo's testing and/or examination of medication delivery devices of others, including how and where such testing/examination is conducted; how Novo records such testing/examination, and where documents referring or relating to such testing/examination are maintained.

5. Novo's testing and/or examination of medication delivery devices made by Novo and/or others, including the manufacturer and model of each such medication delivery device tested and/or examined, the identity and last known contact information of the persons involved in the testing/examination, and any documents memorializing, referring or relating to such testing/examination.

6. The extent to which Novo employees or agents attend trade shows where medication delivery devices of others are/were displayed, who typically attends such trade shows on behalf of Novo, and the existence of records referring or relating to attendance by employees or agents of Novo.

7. The extent to which Novo collects and/or maintains literature on medication delivery devices made by others, including medication delivery devices that include:

   a. snap locks, snap connections, snap fit connections, and/or any other snap feature;

   b. components designed to prevent axial movement between a dosage assembly and a cartridge or cartridge assembly; and/or

   c. components designed to prevent disengagement of a plunger from a stopper,

   the identity of all individuals who maintain such information, and where such information is maintained.

8. The extent to which Novo collects and/or maintains literature on needles and needle assemblies, including needles and needle assemblies made by others, and including needles and needle assemblies that include non-threaded connections, such as snap locks, snap fits, or other snap

features, for example, the identity of all individuals who maintain such information, and where such information is maintained.

9. Novo's knowledge of medication delivery devices, which may have been in existence before July 8, 1999, that include snap locks, snap connections, snap fit connections, and/or any other snap feature; the identity and location of such medication delivery devices, the identity of the persons most knowledgeable of such medication delivery devices, and any documents referring or relating to such medication delivery devices.

10. Novo's knowledge of medication delivery devices, which may have been in existence before July 8, 1999, that include components designed to prevent axial movement between a dosage assembly and a cartridge or cartridge assembly; the identity and location of such medication delivery devices, the identity of the persons most knowledgeable of such medication delivery devices, and any documents referring or relating to such medication delivery devices.

11. Novo's knowledge of medication delivery devices, which may have been in existence before July 8, 1999, that include components designed to prevent disengagement of a plunger from a stopper; the identity and location of such medication delivery devices, the identity of the persons most knowledgeable of such medication delivery devices, and any documents referring or relating to such medication delivery devices.

12. Novo's knowledge of needles or needle assemblies, which may have been in existence before July 8, 1999, that include non-threaded connections, such as snap locks, snap fits,

or other snap features, for example; the identity and location of such needles and needle assemblies, the identity of the persons most knowledgeable of such needles and needle assemblies, and any documents referring or relating to such needles and needle assemblies.

13.     The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of the OptiPen Starlet at any point before June 24, 2003.

14.     The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of the Disetronic Penfine needle assembly at any point before June 24, 2003.

15.     The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of U.S. Patent No. 5,370,629 at any point before June 24, 2003.

16.     The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of U.S. Patent No. 6,048,336 at any point before June 24, 2003.

17.     The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of U.S. Patent No. 5,823,998 at any point before June 24, 2003.

18.     The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of U.S. Patent No. 5,599,314 at any point before June 24, 2003.

19.   The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of U.S. Patent No. 6,146,361 at any point before June 24, 2003.

20.   The identities of every current or former Novo employee, agent, consultant, or attorney, who had knowledge of any needle that included a non-threaded connection at any point before June 24, 2003.

21.   The identities of four persons, employed by or consulting with Novo, who have the most knowledge of the operation of medication delivery devices made, sold, or distributed by others anywhere in the world from the 1980s through June 24, 2003; and the general extent of each such person's knowledge.

22.   The identity and contact information of four persons, who were formerly employed by Novo or were consultants on behalf of Novo, who have the most knowledge of medication delivery devices made, sold, or distributed by others anywhere in the world from the 1980s through June 24, 2003, and the general presumed extent of each such person's knowledge.

23.   The identity, location, nature, and volume of the following categories of documents/tangible things maintained by Novo, and the extent to which those documents/tangible things have been produced to sanofi-aventis in this litigation:

    a.   inventor notebooks and/or inventor files referring or relating to the alleged inventions of the '011 and '408 patents;

9

b.  documents referring or relating to conception and/or reduction to practice of the alleged inventions of the '011 and '408 patents;

c.  documents relating to the potential or attempted commercialization and/or use of the alleged inventions of the '011 and '408 patents;

d.  documents referring or relating to testing of the alleged inventions of the '011 and '408 patents;

e.  prototype(s) of the alleged inventions of the '011 and '408 patents, and any documents relating to those prototype(s);

f.  documents referring or relating to any suggestion or request to prepare and file one or more patent applications for the alleged inventions described or claimed in the '011 and '408 patents;

g.  documents referring or relating to the preparation and prosecution of U.S. or foreign patents/applications on the alleged inventions described or claimed in the '011 and '408 patents;

h.  Prior Art and/or information relevant or material to the validity or invalidity of the alleged inventions of the '011 and '408 patents;

i.  prototypes or devices or portions of devices that were tested, reviewed, or used in work or development leading to the conception, development, reduction to practice, use, or potential or attempted commercialization of any of the alleged inventions described or claimed in the '011 and '408 patents;

j.  documents referring or relating to Novo's tracking, discussion, review, analysis, sampling, disassembly, and/or reverse engineering of competitors' medication delivery devices;

k.  information or materials, authored by, reviewed, studied, or known to any named inventors of the '408 patent before July 8, 1999, that set forth, describe, or explain any other's medication delivery devices, suggestions, proposals, articles, teachings, publications, or patents that relate in any way to the alleged inventions described or claimed in the '408 patent, including but not limited to:

    (i) snap locks, snap connections, snap fit connections, and/or any other snap feature;

    (ii) components designed to prevent axial movement between a dosage assembly and a cartridge or cartridge assembly; and/or

    (iii) components designed to prevent disengagement of a plunger from a stopper

l.  information or materials, authored by, reviewed, studied, or known to any named inventors of the '408 patent before July 8, 1999, that set forth, describe, or explain any needles or needle assemblies that include non-threaded connections, such as snap locks, snap fits, or other snap features, for example.

24. All steps taken or procedures followed by Novo to ensure that all material Prior Art references known to and/or assigned to Novo, including U.S. Patent Nos. 6,004,297; 5,968,021; and 5,331,954, were submitted to the Examiner of the application that issued as the '408 patent, for consideration during the prosecution of the '408 patent.

25. All steps taken or procedures followed by Novo to attempt to ensure that all material Prior Art references cited or identified during the prosecution of U.S. Patent No. 6,562,011 were submitted to the Examiner of the application that issued as the '408 patent, for consideration during the prosecution of the '408 patent.

26. The identities of the persons most knowledgeable about the conception and reduction to practice of the subject matter claimed and/or disclosed in the '408 patent and in the '011 patent.

27. All facts and circumstances relating to the conception and reduction to practice of the subject matter claimed and/or disclosed in the '408 patent and in the '011 patent, including but not limited to the dates of conception and reduction to practice, the events leading up to conception and reduction to practice, the identity of each document or thing evidencing, referring to, or relating to such conception and reduction to practice, and all of the persons involved.

28. All documentation setting forth, evidencing, referring to, or relating to the conception, discovery, development, or reduction to practice of the subject matter disclosed and/or claimed in the '408 patent and in the '011 patent, including records of invention, conception records, invention disclosure documents, or any other documentation or things.

29. The identification of all former and current Novo employees most knowledgeable about the subject matter addressed in topic nos. 1-30 above.

30. All steps taken, including the identity of all documents reviewed and all persons consulted, by Novo to prepare one or more witnesses to give testimony on its behalf in response to the 30(b)(6) deposition notice associated with the above topics.

31. Novo's document storage and retention policies, including the criteria for determining which documents are retained, how long such documents are retained, where documents are stored, and when and how documents are destroyed.

**EXHIBIT B**

DEFINITIONS

All definitions set forth in Exhibit A above are incorporated as if set forth fully herein.

INSTRUCTIONS

All instructions set forth in Aventis's previous document requests are incorporated as if set forth fully herein.

DOCUMENT REQUEST

1.    All documents that have been referred to by Novo in preparing for this deposition or that are the source of information that Novo expects to provide in response to this deposition notice.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2006, the attached **AVENTIS'S THIRD NOTICE OF DEPOSITION TO NOVO NORDISK A/S PURSUANT TO RULE 30(b)(6)** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| Frederick L. Cottrell, III, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE 19899 | **HAND DELIVERY** |
| Jeffrey J. Oelke, Esquire<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, NY 10036-2787 | **VIA FEDERAL EXPRESS** |

/s/ Lauren E. Maguire
_____
Lauren E. Maguire