IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOVO NORDISK A/S,

    Plaintiff and Counterdefendant,

        v.

AVENTIS PHARMACEUTICALS INC,
SANOFI-AVENTIS, and AVENTIS
PHARMA DEUTSCHLAND GMBH,

    Defendants and Counterplaintiffs

C.A. No. 05-645-SLR

**REDACTED – PUBLIC VERSION**

---

## NOVO NORDISK A/S'S ANSWERING BRIEF
## IN OPPOSITION TO AVENTIS'S MOTION FOR ATTORNEY FEES

Of Counsel:

Jeffrey J. Oelke
Stephen J. Vitola
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Telephone: (212) 819-8200

Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P A
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Plaintiff*

Dated: October 9, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

I.      NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

II.     SUMMARY OF THE ARGUMENT ............................................................................ 2

III     FACTS ......................................................................................................................... 6

        A.    The '408 Patent Is Directed To The Specific Coupling Combination Delivery
              In An Insulin Device .......................................................................................... 6

        B.    Numerous References Were Cited During Prosecution of the '408 Patent ........ 6

        C.    The OptiClik Device Infringes The '408 Patent ............................................... 8

        D.    Aventis's Allegations Of Inequitable Conduct Are Baseless ............................ 8

              1.  The '011 Patent And Its Prosecution ...................................................... 9

              2.  The January 17 Office Action ............................................................... 10

              3.  The '361 Patent ..................................................................................... 10

              4.  The '833 Patent ..................................................................................... 11

              5.  The '297 Patent ..................................................................................... 11

              6.  Novolin Pen .......................................................................................... 11

              7.  The '021 Patent ..................................................................................... 12

        E.    Aventis Obstructed Discovery Related To Damages And The
              Viability Of OptiClik ....................................................................................... 12

        F.    Novo Nordisk's Litigation Conduct .................................................................. 13

IV      ARGUMENT ............................................................................................................. 13

        A     The Applicable Law Demonstrates That Attorney Fees
              Should Be Denied ............................................................................................. 13

        B     Aventis's Untimely Allegations Of Inequitable Conduct
              Should Be Disregarded ..................................................................................... 15

C.   Aventis Has No Basis For Alleging That The '408 Patent Was
Procured Through Inequitable Conduct .......................................................16

1. There Is No Basis For Finding Any Reference Material To
The '408 Patent Claims ................................................................. 16

2. There Was No Intent To Deceive ................................................... 26

D.   Novo Nordisk Did Not Engage In Litigation Misconduct .......................30

1. Novo Nordisk Instituted And Conducted This Litigation In Good Faith........ 31

2. Dismissing This Case Does Not Demonstrate Litigation Misconduct ............... 32

3. Novo Nordisk Has Not Instituted Any Litigation In Bad Faith ............... 34

E.   The Equities Weigh Against Awarding Attorney Fees ...............................35

V.   CONCLUSION ................................................................................................. 36

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abbott Labs. v Tosoh Corp.,
    1998 WL 173297 (N D. Ill. Apr. 8, 1998) ...........................................14

Advanced Med. Optics, Inc. v Alcon, Inc.,
    361 F. Supp. 2d 404 (D. Del 2005)...................................................4

Braun Inc v Dynamics Corp.,
    975 F 2d 815 (Fed. Cir. 1992) ......................................................26

Brooks Furniture Mfg., Inc. v Dutailer Int'l, Inc.,
    393 F 3d 1378 (Fed Cir. 2005) ..............................................4, 31

Callaway Golf Co. v Slazenger,
    384 F. Supp. 2d 735 (D. Del 2005) ..........................................*passim*

Cybor Corp. v FAS Tech., Inc.,
    138 F 3d 1448 (Fed Cir 1998).......................................................14

Dayco Prods., Inc. v Total Containment, Inc.,
    329 F 3d 1358 (Fed. Cir. 2003)..............................................*passim*

Elltech Sys. Corp. v PPG Indus. Inc.,
    903 F 2d 805 (Fed. Cir 1990) ......................................................30

FMC Corp. v Manitowoc Co.,
    835 F.2d 1411 (Fed. Cir. 1987) ..............................................16, 17

Fiskars, Inc. v Hunt Mfg Co.,
    221 F 3d 1318 (Fed. Cir 2000).....................................................26

Flex-Restaurant, LLC v Steelcase, Inc.,
    455 F 3d 1351 (Fed. Cir. 2006).....................................................26

Forcillo v Lemond Fitness, Inc.,
    168 Fed. Appx. 429 (Fed. Cir. 2006) ..............................................35

Forest Labs., Inc. v Abbott Labs.,
    339 F.3d 1324 (Fed. Cir. 2003) ....................................................32

Forest Labs., Inc. v. Ivax Pharma., Inc.,
    438 F Supp. 2d 479 (D. Del. 2006) *aff'd*, --- F.3d ----, 2007 WL 2482122
    (Fed Cir Sept. 5, 2007) ...........................................................27

Hebert v. Lisle Corp, 99 F.3d 1109
    (Fed. Cir. 1996) ................................................................................26

Isco Int'l Inc. v. Conductus, Inc.,
    279 F. Supp. 2d 489 (D. Del. 2003) *aff'd*, 123 Fed. Appx. 974 (Fed. Cir.
    2005) ...............................................................................................32

KangaRoos U.S.A., Inc. v. Caldor, Inc.,
    778 F.2d 1571 (Fed. Cir. 1985) .........................................................15

Kingsdown Med. Consul., Ltd. v. Hollister Inc.,
    863 F.2d 867 (Fed. Cir. 1988) .......................................................26, 27

Lighting World, Inc. v. Birchwood Lighting, Inc.,
    382 F.3d 1354 (Fed. Cir. 2004) .......................................................5, 15

M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.,
    439 F.3d 1335 (Fed. Cir. 2006) .....................................................27, 28

Machine Corp. of America v. Gullfiber AB,
    774 F.2d 467 (Fed. Cir. 1985) ...........................................................13

McKesson Infor. Solutions, Inc. v. Bridge Medical, Inc.,
    487 F.3d 897 (Fed. Cir. 2007) .......................................................19, 20

Molins PLC v. Textron, Inc.,
    48 F.3d 1172 (Fed. Cir. 1995) ...........................................................16

Newell v. Nagl Mfg. Co.,
    2007 WL 2033838 (D.N.J. July 11, 2007) .....................................3, 14, 35

Praxair, Inc. v. ATMI, Inc.,
    489 F. Supp. 2d 387 (D. Del. 2007) ...............................................29, 30

SL Waber, Inc. v. American Power Conv. Corp.,
    135 F. Supp. 2d 521 (D.N.J. 1999) ...............................................3, 14, 35

W. L. Gore & Assoc., Inc. v. Oak Materials Group, Inc.,
    424 F. Supp. 700 (D. Del. 1976) ....................................................3, 14

## FEDERAL STATUTES, RULES AND REGULATIONS

35 U.S.C. § 285 .................................................................................................................14

37 C.F.R. § 1.56 ...............................................................................................................16

Manual of Patent Examining Procedures ........................................................................16

Del. L. R. 7.1.3(c)(2) ..........................................................................................................4

Novo Nordisk A/S ("Novo Nordisk") hereby responds to and opposes Aventis's Motion for Attorney Fees ("Motion") filed by Aventis Pharmaceuticals Inc, sanofi-aventis and Aventis Deutschland GmbH (collectively, "Aventis" or "Defendants") (D I. 175.)

Aventis asks this Court to take the extraordinary steps of conducting a paper trial on inequitable conduct after a voluntary dismissal and ruling in Aventis's favor on that paper record. Aventis then further asks that the Court determine that the case is exceptional and exercise its discretion to issue an open-ended ruling allowing an undetermined amount of attorney fees. Novo Nordisk respectfully suggests that not only is such a ruling unprecedented in this District, Aventis cannot meet its burden of proof on the issue of attorney fees or the underlying issue of inequitable conduct  Moreover, such a ruling would dampen a party's incentive to discontinue a lawsuit when economic considerations warrant it  Here, Novo Nordisk should not be penalized on a paper record for taking the prudent step of agreeing to a dismissal that conserves the resources of both the Court and the parties. Aventis's Motion should be denied.

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This case has been dismissed  Plaintiff Novo Nordisk brought this case of patent infringement against Aventis for infringement of United States Patent No  6,582,408 (the "'408 patent") by the Aventis product, OptiClik, a pen type medication delivery device used in conjunction with a needle to deliver insulin injections. (Exhibit 1.)[1] (D I. 6 )
OptiClik turned out to be an irrelevant product that had little or no effect on the U S  insulin market as evidenced by Aventis's rapid replacement of it with its new insulin pen, Solostar  Its

---

[1] Exhibits cited herein are references to the exhibits attached to the "Declaration of Stephen J. Vitola," submitted herewith and are referred to as "Ex.--."  In an attempt to keep the volume of exhibits manageable, Novo Nordisk has submitted the relevant excerpts from many of these exhibits rather than the full document.  Should the Court wish to view any document in its entirety, Novo Nordisk will gladly provide that document to the Court

**REDACTED**                                    Novo Nordisk, to save party and judicial resources

associated with a trial, made the business decision to discontinue this action   Novo Nordisk

therefore filed a motion to voluntarily dismiss the complaint and provided Aventis with a

covenant not to sue. (D.I. 152.)

Aventis responded to Novo Nordisk's motion and requested to be declared the prevailing

party in this litigation, for permission to file a motion for attorney fees, and sought ten days to

file a bill of costs  (D.I. 158.) On September 10, 2007, the Court dismissed this case, but did not

grant Aventis's requests to be declared the prevailing party, did not grant Aventis permission to

file a motion for attorney fees, and did not grant its request for filing a bill of costs. (D.I. 172.)

Instead, the Court declared that each party should bear its own costs. (Id.) Notwithstanding the

Court's Order, Aventis now brings a motion for attorney fees  Novo Nordisk opposes.

**II.    SUMMARY OF THE ARGUMENT**

1.      This is not an exceptional case that warrants the award of attorney fees. Aventis's Motion

is clearly meant only to harass Novo Nordisk. Aventis does not prove, because it cannot, that the

'408 patent was procured through inequitable conduct or that there was litigation misconduct in

bringing and maintaining this case.  There are no acts to support a finding that this case was

exceptional

**REDACTED**

2.

Contrary to what Aventis would like the Court to believe, there

was no nefarious reason for the withdrawal.  Novo Nordisk voluntarily withdrew this case when

**REDACTED**

Novo Nordisk's voluntary withdrawal supports a finding of good faith

See Callaway Golf Co. v Slazenger, 384 F. Supp. 2d 735, 747 (D. Del. 2005) (stating that

voluntary dismissal of an action prior to trial is generally deemed an indication of good faith); <u>W.</u> <u>L. Gore & Assoc., Inc.</u> v. <u>Oak Materials Group, Inc.</u>, 424 F. Supp. 700, 702 (D. Del. 1976) (stating that "public policy favors voluntary dismissals of actions"); <u>Newell</u> v. <u>Nagl Mfg. Co.</u>, 2007 WL 2033838, at *7 (D.N.J. July 11, 2007) ("the fact that Plaintiffs sought dismissal before trial weighs against the imposition of fees and costs"); <u>SL Waber, Inc.</u> v. <u>American Power</u> <u>Conversion Corp.</u>, 135 F. Supp. 2d 521, 528 (D.N.J. 1999) (voluntary dismissals "should not be discouraged by the threat of imposing attorney fees"). Aventis's attempt to garner attorney fees is not only overreaching

**REDACTED**

3.    Since Novo Nordisk voluntarily dismissed this case prior to trial on the merits, and no dispositive motions were ever filed, there has been no decision concerning inequitable conduct. Further, the Court has never even construed the claims of the patent-in-suit. Accordingly, finding this case exceptional on the basis of inequitable conduct requires a summary determination of inequitable conduct. Such determination is rarely, if ever, proper and the record in this case falls far short of the factual requisite for making a summary determination. Indeed, the only summary determination possible under these facts is one of no inequitable conduct.

4.    Aventis also does not, and cannot, prove that any reference is material. Aventis ignores the claims of the '408 patent in its inequitable conduct allegations, the starting point for any materiality analysis. Aventis merely contends, in conclusory fashion, and without providing any analysis, that the references it cites are material to the '408 patent. In regard to the materiality of the '011 patent application, the January 17 Office Action and the '361 patent, Aventis brazenly misstates the law and broadly asserts unfounded presumptions relating to materiality. As to those

3

and the remaining references — the Novolin Pen, and U.S. Patent Nos 4,936,833 (the "'833 patent"), 5,968,021 (the "'021 patent") and 6,004,297 (the "'297 patent) — Aventis provides only bald assertions and conclusory opinions, rather than a comparison of the references to the claimed invention and an analysis of the cumulativeness to references in the prosecution history. This falls far short of its burden of proving inequitable conduct by clear and convincing evidence.[2]

**REDACTED**

6.      Novo Nordisk's infringement claims were brought in good faith and are supported by the record. Merely pointing to a disputed claim term and its application to the accused device, as Aventis does here, does not make Novo Nordisk's infringement claim frivolous. Brooks Furniture Mfg., Inc. v. Dutailer Int'l, Inc., 393 F 3d 1378, 1384 (Fed Cir 2005) ("[b]ringing an

---

[2] Aventis should not be permitted to supplement or augment its argument or remedy its failure to provide evidence of materiality and intent to deceive in its reply brief and, to the extent it attempts to do so, such argument should not be considered. Such supplementation violates Local Rule 7.1.3(c)(2) which states, "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief. . . ." Del. L R 7.1 3(c)(2). As the party bearing the burden of proof on materiality and intent to deceive, Aventis should have included any evidence regarding those elements of proof in its opening brief. See Advanced Med. Optics, Inc. v. Alcon, Inc., 361 F Supp 2d 404, 418 (D Del 2005) (refusing to consider proof of motivation to combine because it was not presented until the movant's reply brief)

infringement action does not become unreasonable in terms of § 285 if the infringement can reasonably be disputed") Regarding other actions, there has already been a factual finding by the ITC that Novo Nordisk did not act in bad faith in bringing the ITC action (Ex. 2) Therefore, contrary to Aventis's contentions, filing of the ITC action cannot support a finding of bad faith Moreover, Novo Nordisk recently initiated a patent action against Aventis's new Solostar device because Solostar infringes a Novo Nordisk patent. The mention of that lawsuit in Aventis's Motion is nothing more than a backdoor attempt to harass Novo Nordisk

7.    The Court should completely disregard Aventis's newfound allegations of inequitable conduct, alleged for the first time in its Motion Aventis's allegations relating to non-disclosure of the application that led to U.S. Patent No. 6,562,011 ("the '011 patent application"), a January 17, 2001 Office Action rendered during prosecution of the '011 patent application (the "January 17 Office Action"), and the Novolin Pen were never presented in any pleading or report during the pendency of this action and those allegations were first raised by Aventis in its Motion, two weeks after the case was dismissed. These new allegations should not be entertained by the Court  Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1366-67 (Fed. Cir. 2004) (upholding denial of attorney fees in view of the exacting standard applicable to attorney fee requests because the allegations of inequitable conduct were not raised prior to the motion for attorney fees). Such new allegations only further illustrate the weaknesses of Aventis's arguments and its willingness to accuse Novo Nordisk of ill conduct on the most hollow of bases

8.    Aventis does not allege any conduct that makes an award of attorney fees appropriate in this case. Indeed, the conduct that Aventis alleges warrants an award of attorney fees is nothing more than a rehashing of old allegations and assertion of new allegations, all of which are

disputed, as well as Aventis's infringement defense re-cast as demonstrating "litigation misconduct." These allegations fall far short of the showing required for attorney fees and Aventis's motion should be denied.

## III.   FACTS

### A.   The '408 Patent Is Directed To The Specific Coupling Combination In An Insulin Delivery Device

In support of its arguments for materiality, Aventis attempts to characterize the '408 patent as directed to an insulin delivery device including a snap lock. (D.I. 175 at 3.) Novo Nordisk never claimed that it invented insulin delivery devices with a snap lock. What Novo Nordisk did invent concerns a reusable insulin dosing device employing removable insulin cartridges. Specifically, the claims of the '408 patent, which define Novo Nordisk's invention, require an insulin delivery device with the combination of <u>releasable</u> couplings — one coupling between a dosing assembly and cartridge assembly and another coupling between the cartridge assembly and a needle assembly — one of which is a releasable snap lock and the other which is an independently working releasable coupling. (Ex. 1, col. 6, li. 1-col. 8, li. 32.) The claimed configuration prevents axial movement of the dosing assembly away from the cartridge assembly and the inadvertent disengagement of the driving means and plunger means from the plunger or stopper. (Ex. 1, col. 2, li. 10-14.) If there is axial movement, the cartridge assembly may be released or partly released from the dosing assembly which could result in the driving means being disengaged from the plunger which can result in misdosing. (Ex. 1, col 1, li. 53-67.) [3]

### B.   Numerous References Were Cited During Prosecution of the '408 Patent

Throughout the examination of the '408 patent, Novo Nordisk consistently stressed the <u>combination</u> of a snap lock with another type of releasable coupling in a manner that prevents the

---

[3] All claims at issue in this litigation required that the snap lock coupling be between the cartridge assembly and dosing assembly. Novo Nordisk never asserted that Aventis infringed the claims of the '408 patent directed to a device with a snap lock between the needle and cartridge.

user from inadvertently moving the cartridge assembly axially relative to the dosage assembly that is involved in the claimed invention  (Ex. 3, at p.8; Ex. 4, at p.7.)  The Examiner's reasons for allowance also establish beyond doubt that he understood the claims to mean as much.  (Ex. 5, at p.2.)

During prosecution of the application that led to the '408 patent, Applicants submitted a number of references including, but not limited to, the following:

- U.S. Patent No. 5,688,251 (the "'251 patent").  The '251 patent describes a reusable medication delivery pen.  The device includes a threaded coupling between the cartridge holder and the pen body and a threaded coupling between the cartridge holder and needle assembly.  (Ex. 6.)

- U.S. Patent No. 4,973,318 (the "'318 patent").  The '318 patent describes a disposable insulin delivery pen and its assembly and manufacture.  It describes the use of a snap connection to permanently connect the cartridge housing to the dosage housing during assembly of the device.  The consumer is not able to release the snap connection.  (Ex. 7:

- WO 96/02290 (the "WO '290 patent").  The WO '290 patent describes a needle magazine for "storing and disposition of a snap on needle unit."  The WO '290 patent describes a needle unit with a circumferential ring shaped protrusion that engages with recesses on a needle receiving syringe and a needle unit with recesses for accepting protrusions on the needle accepting syringe.  It explicitly discloses that an axial pressure must be exerted between the needle and the injection device or syringe to provide a snap engagement between the two parts and contrasts this type of connection with screw on needles.  (Ex. 9.)

- EP 0 688 571 (the "EP '571 patent").  The EP '571 patent is described extensively in the specification of the '408 patent.  As described in the '408 patent, the EP '571 patent discloses a prior art reusable medication delivery device that includes a threaded coupling between the dosing assembly and cartridge assembly as well as between the needle assembly and cartridge assembly. (Ex. 10.)

- WO 95/13842 (the "WO '842 patent").  The WO '842 patent describes an injection system having a detachable housing for a reusable injections device (syringe) that includes a drug-containing cartridge and a "connection structure."  The "connection structure" can be formed integrally with a needle and the connection structure containing the needle can be connected to the cartridge via a "snap-fit connection."  In addition, a reusable plunger mechanism is releasably attached to the housing.  (Ex. 34.)

C.    The OptiClik Device Infringes The '408 Patent

**REDACTED**

D.    Aventis's Allegations Of Inequitable Conduct Are Baseless

Aventis makes four allegations of inequitable conduct asserting non-disclosure of seven

different references   Aventis alleges that "Novo" committed inequitable conduct by failing to

disclose (i) the '011 patent application; (ii) the January 17 Office Action; (iii) the '361 patent;
(iv) and certain "Novo References"[4] during examination of the '408 patent. (D.I. 175 at 13)

Three of these allegations—(1) the failure to cite the '011 patent application; (2) the
failure to cite the January 17 Office Action; and, (3) the failure to disclose the Novolin Pen—are
being made for the first time in Aventis's motion for attorney fees. Aventis neither pleaded nor
alleged these purported instances of inequitable conduct at any time during the pendency of this
action.

### 1. The '011 Patent And Its Prosecution

The '011 patent (Ex. 16) is not related to the '408 patent. The applications were filed on
different days, claim priority to different foreign applications and have no common parent or
child applications.

REDACTED

In the '408 patent claims, one coupling must be a releasable snap lock and the
combination must prevent axial movement between the cartridge assembly and dosing assembly
of the device when a needle is removed while holding the dosing assembly. (Ex 1, col 6, li 1-
col. 8, li. 32.) It is the claimed combination of the two different types of couplings that prevent
axial movement that is the key to the '408 patent's claimed invention. By contrast, such axial
movement could occur in the standard threaded connections embodied by all the claims of the
'011 patent, which are directed to an entirely different invention, a threaded coupling that is
unitarily molded to a cartridge. (Ex 16, col. 6, li. 23-65.) The invention of the '011 patent is not
directed to the prevention of axial movement and does not prevent or even address the problem
the '408 patent solves.

---

[4] These include the '833 patent, the '297 patent and the '021 patent and a single device called
NovoPen II in Europe and Novolin Pen in the United States.

### 2. The January 17 Office Action

The examiner did not reject any claims containing a snap lock in the January 17 Office Action and could not have because none of the claims of the '011 patent include the limitation of a snap lock. (Ex 17) The examiner does not describe the '361 patent as including a snap lock or even snap fit coupling. While Aventis implies that the examiner's statement that the coupling means are "opposed" is somehow akin to a snap lock in combination with another coupling that prevent axial movement between the dosing assembly and the cartridge assembly, a review of the figures in the '361 patent to which the examiner refers, clearly demonstrates that by "opposed," the examiner meant that the couplings are at opposite ends of the cartridge holder. (Ex. 18, Figs 1, 2.)

### 3. The '361 Patent

The '361 patent is directed to a pen that overcomes the 30 gauge limit of previous pen needle assemblies. (Ex 18, col 2, li 15-17) Every claim of the '361 patent includes a limitation directed to a 31 gauge needle. (Ex 18, col 5, li 37-col 6, li 42) The '361 patent does not disclose a snap lock anywhere in the patent.

**REDACTED**

Moreover, the '361 patent does not teach using independent couplings to prevent inadvertent disengagement of the coupling between the cartridge assembly and dosing assembly and still allows a screw off needle, which makes the disclosed device subject to the same possible misdosing that the '408 patent solved.

**REDACTED**

### 4. The '833 Patent

The '833 patent does not disclose a snap lock coupling. (Ex 19) The '833 patent specifically describes the coupling between the needle assembly and the cartridge holder and between the cartridge holder and the dispensing devices as threaded couplings. (Ex. 19, col. 4, li. 11- col. 5, li. 12; col 5, li 40-44; col. 5, li. 50-51; col. 6, li 46-48; Figs. 8, 9.)

Aventis's representation that the "snap fits" described in col. 9, li 38-41 of the '833 patent is relevant to the '408 invention is particularly egregious. The snap fits described there are related to manufacture and assembly, for example, for snapping two semicircular pieces together to form a housing. Those snap fits are not releasable and have nothing to do with releasable coupling of the cartridge assembly and dosing assembly or of the cartridge assembly and needle assembly. Those "snap fits" certainly are not releasable couplings as required by the claims of the '408 patent.

### 5. The '297 Patent

The '297 patent is directed to a disposable insulin delivery device. (Ex. 20) In such disposable devices the insulin cartridge is inserted into the device at the manufacturing site and the cartridge assembly is permanently coupled to the dosing assembly so that it cannot be removed by the pen user. The device described in the '297 patent does not include two releasable couplings

**REDACTED**

### 6. Novolin Pen

NovolinPen is a reusable insulin delivery device that only includes threaded couplings. This conclusion is supported by the instructions for NovolinPen (Ex 21) and NovoPen II. (Ex 22.) Because both couplings in both devices are threaded, both Novolin Pen and NovoPen II are subject to the misdosing problem solved by the '408 patent invention. In fact, potential

misdosing problems with insulin pens such as the Novolin Pen were the impetus behind the invention of the '408 patent

### 7. The '021 Patent

The '021 patent is directed to a needle assembly. (Ex 23) It is completely lacking in any description of a coupling between a dosing assembly and a cartridge assembly.[5]

### E.    Aventis Obstructed Discovery Related To Damages And The Viability Of OptiClik

Despite Novo Nordisk's repeated requests, Aventis continually refused to provide any damages documents dated after October 2006. (Ex. 24, seventh point)




**REDACTED**




previously described in Novo Nordisk's Motion to Dismiss and not denied by Aventis, Aventis never provided updated responses to Novo Nordisk's interrogatories on damages

---

[5] In support of its Motion, Aventis states that the '021 patent issued on October 19, 1999, a true statement, but then adds "some 9 months before the application for the '408 patent was filed," erroneously implying that the '408 patent was not filed until sometime in 2000. (D.I. 175 at 5.) In fact, the '408 patent was filed on July 8, 1999 — more than three months prior to the date the '021 patent issued. (Ex 1)

F.    Novo Nordisk's Litigation Conduct

Aventis has manufactured its complaints about "egregious" litigation conduct solely for the purpose of its Motion. The record demonstrates that Novo Nordisk's infringement position was not "tenuous" and that the marketplace performance of the accused OptiClik device justified discontinuing this litigation. Moreover, not once during the course of this action did Aventis raise the issue of inadequate discovery responses or "egregious" conduct with the Court. To the contrary, throughout this litigation, Novo Nordisk and its attorneys acted properly. Indeed, when Aventis requested extensions of discovery deadlines, including the time for producing documents, the time for amending pleadings, and the time to disclose whether or not it would rely on advice of counsel, Novo Nordisk agreed to those extensions.

Moreover, when Aventis complained regarding the adequacy of the covenant not to sue that Novo Nordisk had provided with its Motion to Dismiss, Novo Nordisk revised the covenant to include the changes Aventis requested, despite Novo Nordisk's belief that the original covenant was adequate. Novo Nordisk also agreed to include a reference to that covenant in a new amended order dismissing this case, even though it was unnecessary. Aventis's senseless allegations of litigation misconduct are demonstrated by its continued complaints regarding the ITC action despite the fact that the OUII and ITC have already specifically rejected Aventis's contention that the ITC action was frivolous. (Ex. 2.)

IV.    ARGUMENT

A.    The Applicable Law Demonstrates That Attorney Fees Should Be Denied

An award of attorney fees is an extraordinary form of relief that should be used sparingly and only to prevent undue prejudice or gross injustice. See Mach. Corp. of Am. v Gullfiber AB, 774 F.2d 467, 472 (Fed. Cir. 1985). In considering whether attorney fees should be awarded, the trial court undertakes a two step inquiry. First, the court determines whether clear and

convincing evidence establishes that the case is exceptional pursuant to 35 U.S.C. § 285 and, if so, then decides as a matter of discretion whether any award should be granted. Cybor Corp. v. FAS Tech., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998). Here, Aventis bears a particularly heavy burden because the case was dismissed prior to trial and there have been no factual findings, let alone a claim construction. W. L. Gore, 424 F. Supp. at 703.

A voluntary dismissal is also evidence of good faith, Callaway, 384 F. Supp. 2d at 747, is favored by public policy, W. L. Gore, 424 F. Supp. at 702, and weighs against the imposition of costs and fees. Abbott Labs. v. Tosoh Corp., 1998 WL 173297, at *8 (N.D. Ill. Apr. 8, 1998) ("Courts have denied motions for attorneys' fees when the plaintiffs have voluntarily and in good faith dismissed their cases"); accord Newell, 2007 WL 2033838, at *7 ("the fact that Plaintiffs sought dismissal before trial weighs against the imposition of fees and costs"); SL Waber, 135 F. Supp. 2d at 528 (voluntary dismissals "should not be discouraged by the threat of imposing attorney fees").

Summary determination of inequitable conduct, which is a predicate to granting Aventis's Motion, is improper without detailed factual findings that are required to determine materiality and intent to deceive. A determination of materiality requires a detailed factual analysis of the relevance of the teachings of each reference both with respect to the claims of the patent-in-suit and with respect to the other prior art references that were before the examiner. This is typically improper on summary determination. Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1367 (Fed. Cir. 2003) (reversing summary judgment of inequitable conduct because a determination regarding materiality requires a detailed factual analysis). Likewise, evaluation of all facts and circumstances required by the intent element is "rarely enabled in summary

proceedings " KangaRoos U.S.A., Inc. v. Caldor, Inc., 778 F.2d 1571, 1578 (Fed. Cir. 1985) (reversing summary determination of inequitable conduct).

**B.    Aventis's Untimely Allegations Of Inequitable Conduct Should Be Disregarded**

Aventis's new allegations of inequitable conduct should not be considered on this Motion. Aventis neither pleaded nor alleged at any time during the pendency of this action that (1) failing to cite the '011 patent application; (2) failing to cite the January 17 Office Action; or, (3) failing to cite the Novolin Pen or NovoPen II constituted inequitable conduct. Aventis's new allegations do not appear in Aventis's second amended answer (or in any previous answer for that matter), in any discovery response, or in its experts' reports and was not alleged until two weeks after the case was dismissed. This warrants precluding Aventis from presenting the new allegations. Lighting World, 382 F.2d at 1366-67 (finding no error in district court's decision to deny motion for attorney fees because the allegations were not raised until the motion for attorney fees)

These new allegations are not among the eight (8) separate references that Aventis asserted as the basis for inequitable conduct during the pendency of the suit. Each of these references was asserted against five (5) different Novo Nordisk attorneys — every attorney that prosecuted the '408 patent application. Assertion of these new allegations and dropping of the previously pled but unfounded allegations demonstrate the cavalier manner in which Aventis throws around inequitable conduct allegations. Such allegations cost Aventis nothing and are aimed to inflict the greatest degree of harassment possible, spawned by Aventis's proclivity for accusing others of inequitable conduct on the most hollow of bases.

C.    Aventis Has No Basis For Alleging That The '408 Patent Was Procured Through Inequitable Conduct

In order to prove inequitable conduct, Aventis must show by clear and convincing evidence that a person owing a duty of candor and good faith to the PTO: (1) omitted information that was material to the patentability of the invention; (2) had knowledge of the existence and materiality of the information; and (3) intended to deceive the PTO. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995) The duty to disclose does not apply to a corporation or institution as a whole, however, but only to individuals, and only to those individuals who are substantively involved in the preparation or prosecution of the application. Manual of Patent Examining Procedures § 2001.01; 37 C.F.R. § 1.56(c). An applicant has no duty to submit information which is not material to the patentability of any existing claim. 37 C.F.R. § 1.56(b). If a reference is cumulative or less pertinent than other references already disclosed, it is not material and need not be disclosed. FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987); 37 C.F.R. § 1.56(b).

1. There Is No Basis For Finding Any Reference Material To The '408 Patent Claims

In order to frame the materiality argument, it is important to understand what is claimed in the '408 patent The claims of the '408 patent are directed to a combination of releasable couplings (couplings that the user can couple and uncouple) that prevent axial movement of the cartridge assembly in relation to the dosing assembly when the needle assembly is removed when holding the dosing assembly. (Ex. 4 at p. 7; Ex. 1, col. 6, li. 1-col. 8, li. 32.) Each claim requires that one of these couplings is a releasable snap lock and the other coupling is releasable and independently functioning so that the combination prevents axial movement. (Ex. 1, col. 6, li. 1-col. 8, li. 32.) Significantly, the '408 patent is not directed simply to a device that incorporates a snap lock — a fact that Aventis overlooks because it is fatal to its arguments

None of the references cited by Aventis are material because each of their disclosures is either cumulative to the references cited during prosecution of the '408 patent, are irrelevant to the claimed invention, or both. That all of the references cited by Aventis are cumulative to references cited during prosecution is alone dispositive of the issue of inequitable conduct. FMC Corp., 835 F.2d at 1415 (a reference that is cumulative or less pertinent than references already disclosed is not material and need not be disclosed).

### a. The '011 Patent Application Was Not Material To The Claims Of The '408 Patent

Aventis misstates the law and misrepresents the facts concerning the '408 and '011 patents. The sole basis Aventis sets forth in arguing that the '011 patent application is material is that the '011 patent contains a similar disclosure to the '408 patent and was pending at the same time as the '408 patent. Aventis asserts that precedent holds that "if co-pending applications involve similar subject matter and claims, the copendency must be disclosed to the examiner of each involved application." (D.I. 175 at 16-17.) This misstates Federal Circuit precedent. See Dayco, 329 F.3d at 1358.

In fact, the Federal Circuit advocated a much more stringent test in Dayco, holding "that if an inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications." Dayco, 329 F.3d at 1365. By misstating the law, Aventis avoids the step of comparing the claims in the applications to show that they are "patentably indistinct."

In fact, Aventis does not make any mention of the '011 patent claims or the '408 patent claims anywhere in arguing that the '011 patent application is material. Thus, Aventis does not show that the '011 patent application would be material under the rule set forth in Dayco. Neither does Aventis attempt to show that the '011 patent application would meet the reasonable

examiner test  The only premise for materiality that Aventis presents is its incorrect statement of law.  Accordingly, Aventis fails to carry its burden of proof.

Had Aventis conducted an analysis of the '408 and '011 patent claims, it would have fallen far short of meeting the standard for inequitable conduct set forth in <u>Dayco</u>  The claims of the '011 patent and '408 patent are not similar but are instead directed to two entirely different inventions  The '011 patent claims are directed to a device that includes a unitarily molded threaded coupling, in which both the coupling between the dosing assembly and cartridge assembly and the coupling between the cartridge assembly and needle assembly are <u>threaded,</u> a configuration that presents the very problem the '408 patent solves  Every claim of the '011 patent must include two threaded couplings, while every claim of the '408 patent must include a releasable snap lock in combination with another releasable coupling.  Thus, not only are the claims patentably distinct, they are not even similar.

<b>REDACTED</b>

Finally, what is disclosed in the '011 application, which discloses only two threaded couplings, is cumulative of the art that was already before the examiner that disclosed two threaded couplings, including the '251 patent and the EP '571 patent  Accordingly, there is no basis for finding the '011 patent application material.

### b. The January 17 Office Action Was Not Material To The Claims Of The '408 Patent

As was the case with the '011 patent application, Aventis cannot demonstrate the materiality of the January 17 Office Action.  Aventis argues, without citation to any legal authority, that "a showing that two copending applications are similar suffices to make a decision on the patentability of one application material to a copending application."  (D.I  175 at 19.)  Although the Federal Circuit has held that an office action rejecting a claim that is "substantially

similar" to those in the asserted patent would be material to prosecution of the asserted patent, Dayco, 329 F.3d at 1368, it has not set out such a broad-ranging rule that Aventis proposes. In fact, the Federal Circuit in McKesson merely clarified that a lack of substantial similarity in claims does not preclude a finding that the rejection was material if a reasonable examiner would have thought the rejection important to the patentability of the pending claims. McKesson Infor. Solutions, Inc. v. Bridge Medical, Inc., 487 F.3d 897, 919-20 (Fed. Cir. 2007). In other words, in situations where substantially similar claims are rejected, a presumption of materiality applies. Id. If the claims are not substantially similar, however, the reasonable examiner test must be applied. Id.

Aventis does not offer any evidence that satisfies either test of materiality. Aventis's sole argument that the January 17 Office Action is material is that it is a rejection of claims in a similar application. This is not sufficient under the law. As shown above, the claims of the '011 patent and '408 patent are not substantially similar and are in fact directed to different inventions addressing different problems. Further, Aventis does not assert that that claims of the '011 patent and '408 patent are substantially similar and so cannot satisfy the test set out in Dayco. Aventis provides no basis to conclude that a reasonable examiner would have thought the office action important to the patentability of the '408 patent claims and so cannot satisfy the test of McKesson.

The January 17 Office Action is not material under any test. The claims rejected in the January 17 Office Action are not substantially similar to the claims of the '408 patent for at least the reason that the '011 claims that were the subject of the January 17 Office Action all included two threaded couplings, which are not independently functioning and would still be subject to the problem solved by the '408 patent. Each claim of the '408 patent requires that the couplings

work independently, a requirement that two threaded couplings could not possibly satisfy. The January 17 Office Action would therefore not have been important to a reasonable examiner and was not material.

### c. The '361 Patent Was Not Material To The Claims Of The '408 Patent

Aventis does not provide any basis for finding the '361 patent material. Aventis's sole argument for the materiality of the '361 patent is that the '361 patent was cited against the claims of the '011 patent. (D.I. 175 at 21-22.) Contrary to Aventis's argument, there is no presumption that a reference disclosed in one application is material to a second co-pending application just because the applications are similar. Dayco, 329 F.3d at 1367 ("the mere fact that [the examiner of the co-pending application] found the [reference] material [to the co-pending application] is informative but not determinative" to materiality). (emphasis added). Since the '011 patent and the '408 patent are directed to entirely different inventions, there is no basis for finding the '361 patent material to the '408 patent solely because the '361 patent was disclosed in the '011 patent.

In attempting to correlate this case with McKesson, Aventis overlooks that the district court found the non-disclosed reference material after undertaking an analysis under the reasonable examiner standard, not after applying a rule based on similarity of co-pending applications. McKesson, 487 F.3d at 917-18. Since Aventis does not provide any analysis of the materiality of the '361 patent to the '408 patent under the reasonable examiner standard, there is no basis for finding the '361 patent material.

In any event, the '361 patent is in no way material. The '361 patent does not disclose a snap lock and does not teach the use of independently working couplings. To the extent that the '361 patent discloses a snap fit, snap fit couplings are not reversible snap locks and the '361 patent's disclosure of a snap fit is not described as reversible. (Ex. 32 ¶ 41.) The "snap fit" is in fact described as an alternative to the reversible threaded couplings described in the '361 patent

Nor was anything relating to a "snap fit" in the '361 patent under discussion in the '011 patent

**REDACTED**

The '361 patent was at most cumulative to the '318 patent, which describes disposable devices with snap fits that do not couple or uncouple. Even if it is argued to be a snap on needle, such an assembly is cumulative of at least the WO '290 patent which contains a detailed description of a snap fit needle assembly, not just a passing mention of the term "snap fit" as contained in the '361 patent. The WO '290 describes:

> A snap-on needle unit is a unit which may be mounted on a syringe by an axial movement of the syringe and the needle unit towards each other. During this movement a needle receiving part of the syringe is passed into a sleeve of a needle hub forming part of the needle unit until protrusions on the inner surface of the sleeve engage recesses in the needle receiving part.
>
> In opposition to needle units which a [sic = are] screwed onto the syringe an axial movement must be exerted on the needle unit and the syringe to provide the snap engagement between the two parts.

(Ex. 9, p. 1, li. 7-13.)

The '361 patent is also cumulative to the WO '842 patent which teaches a "snap-fit" connection between a "connection structure" which can contain a needle and the forward end of a cartridge. (Ex. 34 at p. 3, li. 6-11, p. 5, li. 10-14, p. 8, li. 10-15, 20-24, Fig 3.) This syringe body can be adapted to be releasably attached to a plunger mechanism, i.e., an injection device relevant to the '408 patent. (Id. at p. 2, li. 18-p. 3, li. 11.) In sum, the WO '842 patent was much more pertinent and described injection devices that may contain snap fit needles in much greater detail than the '361 patent. Accordingly, the '361 patent was not material to the claims of the '408 patent.

### d. Aventis Does Not Prove That Any Novo Reference Was Material To The Claims Of The '408 Patent

Aventis does not present any evidence to support their conclusory statement that the "Novo References" are "highly material." Aventis devotes all of ten lines to its argument that the "Novo References" are material and that they were withheld with an intent to deceive. Such a cursory examination cannot support a showing of inequitable conduct. Under closer scrutiny, the "Novo References" are all cumulative to disclosed references and in no way material.

### i. Novolin Pen Was Not Material To The '408 Patent Claims

Novolin Pen would not have been material to the claims of the '408 patent. Aventis does not explain why the Novolin Pen would be material to the '408 patent. Indeed, since Aventis never pleaded nor alleged that failing to disclose the Novolin Pen was inequitable conduct prior to the time this case was dismissed (which should preclude Aventis from making such an assertion now), it can only be assumed that Aventis is claiming that the Novolin Pen includes a "snap lock."

Aventis's contention is contradicted by the description of Novolin Pen[6] provided in the instructions for its use. Those instructions make clear that Novolin Pen employs two threaded couplings by instructing users to "<u>screw</u> the clear cartridge casing up into the barrel securely." (emphasis in original) (Ex. 21 at NN000297.) The instructions describe attaching a needle: "<u>screw</u> the PenNeedle completely onto the clear cartridge casing." (Ex. 21 at NN000298.) To remove the PenNeedle, a user is instructed to "<u>unscrew</u> the PenNeedle" (Ex. 21 at NN000302.) And to remove the cartridge of medication from the clear casing, the user is instructed to "<u>unscrew</u> the clear cartridge casing from the barrel." (Ex. 21 at NN000303.) The instructions for Novolin Pen make no mention of a snap connection of any kind and are limited to threaded

---

[6] Novolin Pen and NovoPen II are identical devices. All references to Novolin Pen made herein apply equally to NovoPen II.

connections  The very problem that the '408 patent addresses — a misdosing due to the inadvertent release of a coupling when disconnecting a needle from the device — was a potential problem with the Novolin Pen and NovoPen II.[7]

Since Novolin Pen includes only threaded couplings, the Novolin Pen would have been cumulative of at least the '251 patent, which describes a cartridge holder that is mounted to the dosing assembly by a threaded coupling, (Ex  6, col  5, li  50-57), and a needle assembly that is mounted to the cartridge holder by a threaded coupling.  (Ex. 6, col. 6, li. 15-20.)  Likewise, Novolin Pen would have been cumulative of the EP '571 patent  Thus, there is no basis for finding Novolin Pen or NovoPen II material

### ii. The '833 Patent Was Not Material To The '408 Patent Claims

Aventis makes no attempt to explain the materiality of the '833 patent.  To the extent Aventis claims that the '833 patent is material because it was disclosed in the '011 patent application, for the same reasons that are discussed above for the '361 patent, it is not.

To the extent Aventis alleges it is material because it discloses a "snap-lock released through threads," the descriptions provided in the '833 patent preclude such characterization. The '833 patent discloses threaded couplings between the cartridge holder and collar of the dispensing device  This connection is clearly portrayed in Figure 9 of the '833 patent and unequivocally described in the '833 patent as a threaded coupling. (Ex. 19, col 5, li 40-44; Fig

---

[7] The instructions for NovoPen II—which is the same device as Novolin Pen but for the name— also demonstrate that both couplings in the NovoPen II are threaded couplings. (Ex. 22 at SAN00976020-SAN00976028 )  The NovoPen II instructions describe and depicts the process of inserting a PenFill cartridge.  In doing so, the instructions state to "[i]nsert Penfill Cartridge" and "screw firmly home "  It also states to "[r]emove protective tab from a NovoPen Needle and screw needle firmly onto pen " (emphasis added) (Ex. 22 at SAN00976023.)  A user is instructed to unscrew the cartridge and needle assemblies when changing the cartridge and needle, respectively. (Ex. 22 at SAN00976025, SAN00976026 )  There is no mention in the Novopen II instructions of any coupling other than a threaded coupling by which a user screws the parts of NovoPen II together

9 ) Further still, the '833 patent describes that the "housing 120 [ ] is <u>screw fit into</u> the collar 2b extending axially from the front end of the dispensing unit" and that the cartridge holder is "<u>threaded</u> into the collar." (emphasis added) (Ex. 19, col. 5, li. 50-51 & col. 6, li. 46-48.) The '833 patent does not describe the coupling as a snap lock at all, but only a stop to prevent over-rotation when the holder is screwed into the collar. (Ex. 19, col. 5, li. 50-53.)

REDACTED

The '833 patent is also cumulative of the references that were disclosed to the examiner during prosecution of the '408 patent. The '833 patent, which describes and discloses nothing more than a pen type medication delivery device with threaded couplings between the needle assembly and cartridge assembly and between the cartridge assembly and dosing assembly, would be cumulative of at least the '251 patent and the EP '571 patent, both of which describe the same pair of couplings. Thus, the '833 patent could not have been material to the '408 patent claims for at least the reason that it is cumulative of the '251 patent and the EP '571 patent.

### iii. The '021 Patent Was Not Material To The '408 Patent Claims

Aventis does not point to any aspect of the '021 patent that makes it material to the '408 patent claims. However, to the extent that Aventis attempts to claim that the '021 patent discloses a snap on needle, the '021 patent is cumulative of the art that was before the examiner. The '021 patent is directed to a needle and a magazine that covers the tip of the needle. The '021 patent describes the "snap-on" therein as an "engagement between the protrusions of this sleeve and the recesses of the connecting piece . . . ." (Ex. 23, col. 1, li. 54-55.)

References disclosing disposable snap on needles with the same connection were presented to and considered by the Examiner during prosecution of the application that led to the

'408 patent. On November 12, 1999, for example, Novo Nordisk filed an Information Disclosure Statement (IDS) with the PTO disclosing the existence of the WO '290 patent, entitled "Needle Magazine" and owned by Novo Nordisk. The WO '290 patent discloses the same information as the '021 patent. (Ex. 9, Abstract; p. 6.) Almost identically to the '021 patent, the snap connection in the WO '290 patent is described as "a snap on needle unit."

Everything that is described in the '021 patent was before the Examiner in the description provided by the WO '290 patent. Accordingly, the '021 patent is cumulative and cannot be regarded as material.

#### iv. The '297 Patent Was Not Material To The '408 Patent Claims

The '297 patent also cannot form the basis of a charge of inequitable conduct because the '297 patent is cumulative of the references that were before the examiner during examination of the '408 patent. Aventis provides no explanation of its claim that the '297 patent is material. However, to the extent that Aventis claims that the '297 patent discloses a "snap-lock," it is cumulative of at least the '318 patent, another Novo Nordisk patent, that was before the examiner during prosecution. Both the '297 patent and the '318 patent are directed to disposable medication delivery devices. (Compare Ex. 20 with Ex. 7.) The connection between the dosing assembly and cartridge assembly is described in the '297 patent as "a ring shaped bead" that is "snapped into a corresponding circumferential groove." (Ex. 20, col. 5, li. 35-41.) Likewise, the '318 patent describes, "a circumferential groove 19 receiving a circumferential projection 20 on the casing 1." (Ex. 7, col. 5, li. 52-55.) The disclosures of disposable devices are not pertinent to the '408 patent because the claims of the '408 patent are directed to misdosing errors of reusable devices with releasable couplings. In any event, however, the '297 patent is cumulative to the '318 patent and is not material to the claims of the '408 patent.

To the extent Aventis contends that any structure disclosed in the '297 patent is a "snap-lock," it is a permanent snap mechanism and not a releasable snap lock as required by the claims of the '408 patent.

**REDACTED**

reason, it would not be material to the claimed inventions, which all require that the snap lock be releasable.

### 2. There Was No Intent To Deceive

In addition to the lack of materiality of the references Aventis relies on, Aventis's charges of inequitable conduct must also fail because Aventis did not and cannot show that any person had an intent to deceive the PTO.[8]   In each and every instance of purported inequitable conduct, Aventis asks the Court to infer deceptive intent.  Aventis does not, however, offer any evidence that permits this inference in regard to any reference they cite as a basis for their inequitable conduct allegations   Intent to deceive the PTO must be shown by clear and convincing evidence  Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351, 1363 (Fed. Cir. 2006); Kingsdown Med. Consul., Ltd. v. Hollister Inc., 863 F.2d 867, 872 (Fed. Cir. 1988).  An intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent   See Braun Inc. v. Dynamics Corp., 975 F.2d 815, 822 (Fed. Cir. 1992); Hebert v. Lisle Corp, 99 F.3d 1109,1116 (Fed. Cir. 1996); Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1327-28 (Fed. Cir. 2000).

Lack of a good faith explanation for a nondisclosure of prior art, where non-disclosure is the only evidence of intent, cannot constitute clear and convincing evidence sufficient to support

---

[8] In many instances it is unclear who Aventis is accusing of inequitable conduct because Aventis consistently refers only to "Novo" rather than to any individual

a determination of culpable intent M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439

F.3d 1335, 1341 (Fed. Cir. 2006) (holding that a lack of good faith explanation for the

nondisclosure, without more, cannot constitute clear and convincing evidence sufficient to

support a determination of culpable intent); Dayco, 329 F.3d at 1367 (finding the district erred by

finding intent from the mere fact that the prosecuting attorney knew of the reference but did not

disclose it to the PTO). Here, because Aventis does not present any evidence that allows the

inference of intent they request, and the evidence of record in fact precludes an inference of

intent, Aventis's inequitable conduct claims must fail.

### a. The Evidence Indicates A Lack Of Intent To Deceive

When evaluating intent to deceive, all evidence must be considered, including the

evidence that indicates a lack of intent to deceive. Kingsdown, 863 F.2d at 876; Forest Labs.,

Inc. v. Ivax Pharma., Inc., 438 F. Supp. 2d 479, 500 (D. Del. 2006) aff'd, --- F.3d ----, 2007 WL

2482122 (Fed. Cir. Sept. 5, 2007) ("[i]n determining whether the applicant's overall conduct

evidences an intent to deceive the PTO, the Federal Circuit has emphasized that the challenged

conduct must be sufficient to require a finding of deceitful intent in the light of all the

circumstances" (internal quotations omitted)). Aventis totally overlooks all evidence regarding

the lack of intent to deceive, including the testimony of the two accused attorneys. Aventis can

point to no evidence indicating that the two attorneys that Aventis has summarily accused of

inequitable conduct knew of anything material to the '408 patent that was not cited during

prosecution.

### REDACTED

**REDACTED**

Aventis has offered no justification for ignoring this testimony   Aventis advocates a standard that would hold patent attorneys

to require cross-disclosure of office actions in multiple applications and the references cited therein on an on-going basis. This contravenes the precept that "intent to deceive should be determined in light of the realities of patent practice and is not a matter of strict liability whatever the nature of the action before the PTO." M. Eagles, 439 F 3d at 1343. That Aventis has picked through numerous other prosecution histories of Novo Nordisk applications and in hindsight described what Aventis believes to be material entirely ignores that intent must be proven through actual evidence and not through the litigation-induced inferences of a patent infringement defendant. There was no intent to deceive here and Aventis has offered no credible evidence to support a finding of intent.

### b.   There Is No Basis For Inferring An Intent To Deceive In Regard To The '011 Patent Application Or The January 17 Office Action

Aventis relies on the courts' decisions in <u>Dayco</u> and <u>McKesson</u> to support its argument that intent can be inferred in regard to the '011 patent application and January 17 Office Action. Such reliance is unjustified and should be rejected. In <u>Dayco</u>, neither the district court nor the Federal Circuit addressed intent to deceive related to the failure to disclose the examiner's decision. <u>Dayco</u>, 329 F.3d at 1368. In <u>McKesson,</u> contrary to this case, the evidence of additional conduct came to light after a full and fair elucidation of the facts at trial. The prosecuting attorney engaged in myriad actions that allowed an inference of intent, including being caught in contradictory statements during his deposition and on cross examination at trial. These factual differences are vast and preclude the application of <u>Dayco</u> and <u>McKesson</u> to support an inference of intent to deceive here.

### c.   There Is No Basis For Inferring An Intent To Deceive In Regard To The '361 Patent

Aventis's failure to cite any conduct evidencing an intent to deceive precludes inferring an intent to deceive relating to non-disclosure of the '361 patent. Indeed, this Court has explicitly rejected finding an intent to deceive for failing to cite a reference that was disclosed in an application pending at the same time when there was no additional conduct demonstrating intent. <u>Praxair, Inc.</u> v. <u>ATMI, Inc.</u>, 489 F. Supp. 2d 387, 396-97 (D. Del. 2007). In <u>Praxair</u>, a reference was disclosed in an application that was being simultaneously prosecuted with the asserted patents by the same attorney. <u>Id.</u> The defendants charged that the attorney's failure to disclose that reference during prosecution of the asserted patents constituted inequitable conduct, but did not present any evidence of conduct to support an intent to deceive beyond the disclosure in the co-pending application and the non-disclosure of the reference in the asserted patents. This Court ruled that movants failed to meet the threshold level of intent necessary to support a

finding of inequitable conduct and denied the motion for attorney fees  Id.  Likewise, Aventis has provided no evidence of conduct from which to infer intent from non-disclosure of the '361 patent and in fact ignores the testimony of the accused attorneys which demonstrates a lack of intent and which precludes a finding of inequitable conduct

### d. There Is No Basis For Inferring An Intent To Deceive In Regard To Any Of The "Novo References"

Aventis cannot support an inference that there was an intent to deceive the PTO by non-disclosure of any one of the "Novo References." Aventis's only statement in support of an inference of intent relating to the "Novo References," is that "Novo certainly had knowledge of its own Novolin Pen and the corresponding '833 patent" and that "the '297 and '021 patents were both Novo references." (D.I. 175 at 22.) That, however, is not enough to infer intent Dayco, 329 F.3d at 1367 (reversing finding of inequitable conduct because the mere fact that the prosecuting attorney knew of the undisclosed reference and decided not to submit it does not form a basis for inferring intent ) Aventis's failure to point to anything other than non-disclosure to support an inference of intent, together with the contrary evidence dispelling intent to deceive, precludes a finding of inequitable conduct as a matter of law  Id.

### D.    Novo Nordisk Did Not Engage In Litigation Misconduct

Aventis also argues that this is exceptional case by claiming that Novo Nordisk engaged in bad faith by (1) bringing and continuing this lawsuit; (2) withdrawing this lawsuit; and, (3) bringing other actions to protect its intellectual property rights.  (D.I. 175 at 26.) To establish this case is exceptional, Aventis must prove Novo Nordisk guilty of bad faith litigation by clear and convincing evidence in light of the totality of the circumstances. Elltech Sys. Corp. v PPG Indus. Inc., 903 F 2d 805, 811 (Fed Cir 1990). Aventis can make no such showing

### 1. Novo Nordisk Instituted And Conducted This Litigation In Good Faith

There is no evidence supporting Aventis's allegations that this litigation was legally deficient or unreasonable, or that Novo Nordisk instituted or continued this litigation with the knowledge that it was legally deficient  Aventis contends that Novo Nordisk instituted and maintained this litigation in bad faith because, according to Aventis, Novo Nordisk alleged a tenuous infringement position  Aventis's argument comprises nothing more than its proposed claim construction and proposed facts, all of which Novo Nordisk counters with its own claim construction and findings  Aventis is aware that the Court has never had to rule on these opposing positions but nonetheless asks the Court to make rulings based on its unsupported assertions  Aventis ignores that bringing an infringement action does not become unreasonable in terms of § 285 just because infringement can reasonably be disputed  Brooks Furniture, 393 F.3d at 1384 (reversing determination that patentee conducted bad faith litigation by bringing infringement lawsuit).

Further, evidence shows that Novo Nordisk fully conveyed its infringement position to Aventis and that its infringement position was reasonable

**REDACTED**

Moreover, Aventis's expert report rebutting Novo Nordisk's infringement position was 127 pages long  It is hard to imagine how it could take 127 pages to show non-infringement if Novo Nordisk's infringement position

was so unreasonable  See Isco Int'l. Inc. v Conductus, Inc., 279 F Supp 2d 489, 512 (D Del.

2003) *aff'd*, 123 Fed Appx 974 (Fed Cir 2005) (finding the fact that the case survived an

intensive summary judgment process and garnered wildly different expert opinions on each side

indicative of *prima facie* legal merit).

Indeed, even where a patentee fails to offer any evidence of infringement regarding a

claim limitation, which is not the case here, the Federal Circuit explicitly rejected defendants'

proposition that an award of attorney fees is appropriate  Forest Labs., Inc. v Abbott Labs., 339

F 3d 1324,1327 (Fed Cir 2003) (finding that failure to prove a claim element resulting in non-

infringement does not amount to clear and convincing evidence of bad faith litigation)

Moreover, Novo Nordisk elicited evidence from Aventis's own employees that

demonstrates that its infringement position was reasonable.

**REDACTED**

**2. Dismissing This Case Does Not Demonstrate Litigation Misconduct**

Aventis also tries to depict Novo Nordisk's voluntary dismissal as litigation misconduct

and bad faith  To the contrary, public policy favors voluntary dismissals and Novo Nordisk's

dismissal of its case prior to trial demonstrates good faith  See Callaway, 384 F Supp 2d at 747

(stating that voluntary dismissal of an action prior to trial is generally deemed an indication of

good faith) Although, Aventis tries to distinguish Callaway, its attempted distinction is without

merit  In Callaway, the litigation went on for two years, not the short time that Aventis implies

Id at 747  Like the patentee in Callaway, as soon as Novo Nordisk recognized that this case was

not economically sound, Novo Nordisk decided to withdraw this action  Significantly, such information might have been garnered earlier, thus allowing an earlier dismissal, if Aventis had not been obstructive in providing damages related information.  Indeed, Aventis did not provide any damages related documents and refused to allow witnesses to testify regarding the demise of OptiClik  This alone justifies denying Aventis's Motion, just as the court denied attorney fees in Callaway.

**REDACTED**

---

[9] Novo Nordisk successfully defended a Lanham Act suit brought by Aventis in that District. Ironically, despite prevailing on Aventis's motion for preliminary injunction, which led to Aventis voluntarily dismissing its case, Novo Nordisk chose not to seek attorney fees from Aventis

This makes neither good business sense nor is a proper use of judicial or party resources [10]

Although Aventis categorizes Novo Nordisk's justification for withdrawal as "dubious," Aventis still has not offered any evidence that Novo Nordisk's withdrawal of this lawsuit was unjustified  As when Aventis made this argument in responding to Novo Nordisk's motion to voluntarily dismiss,  **REDACTED**  nor does it provide any evidence contradicting Novo Nordisk's stated reasons for dismissing this case.

**REDACTED**

### 3. Novo Nordisk Has Not Instituted Any Litigation In Bad Faith

Aventis cannot support its contention that Novo Nordisk has instituted litigation in bad faith at the ITC and in the District of New Jersey.  The ITC has already determined that Novo Nordisk did not bring the ITC action in bad faith.  (Ex. 2.)  Regarding the New Jersey Solostar action, Aventis alleges bad faith based upon the mere filing of the complaint.  Aventis offers no

---

[10] Aventis's attempt to rely on the damages anticipated by Novo Nordisk's damages expert or good faith settlement offers made pursuant to Rule 408 are unavailing  Aventis's own view of the damages of this case certainly does not justify any continued litigation.  Neither does Novo Nordisk have unlimited resources for litigation and it had to weigh the significance and resources required for a case concerning a dying product against a new litigation on a new product actively infringing a Novo Nordisk patent

evidence to support their contention that the New Jersey action was brought in bad faith. In any event, such an argument should be addressed to the court where the action is pending.

### E.    The Equities Weigh Against Awarding Attorney Fees

The equities favor denying Aventis's request for attorney fees. A plaintiff's voluntary dismissal weighs against the imposition of attorney fees. <u>Newell</u>, 2007 WL 2033838, at *7 (refusing to grant award of attorney fees after plaintiff voluntarily dismissed its case); <u>SL Waber,</u> 135 F. Supp. 2d at 527 (when a plaintiff voluntarily dismisses a claim there is no sound justification for awarding attorney fees upon mere allegations of inequitable conduct and bad faith); <u>see also</u> <u>Forcillo</u> v. <u>Lemond Fitness, Inc.</u>, 168 Fed. Appx. 429, 431 (Fed. Cir. 2006) (denying motion for attorney fees and noting the fact that Lemond offered only unproven allegations).

As explained herein, Aventis cannot show inequitable conduct, cannot show that Novo Nordisk asserted the '408 patent in bad faith or even that Novo Nordisk would not have been successful in proving infringement if economic considerations did not mandate withdrawing this action. Under the circumstances of this case, the equities clearly favor denial of Aventis's Motion.

Finally, Novo Nordisk objects to Aventis's failure to provide any detailed information regarding the amount of attorney fees sought by its Motion. Aventis obviously is withholding information that their outside counsel undoubtedly regards as sensitive. That information is, however, required by law and Aventis's refusal to provide it further warrants denial of their Motion.

## V.    CONCLUSION

For the foregoing reasons, Aventis's motion for attorney fees should be denied.

Of Counsel:

Jeffrey J. Oelke
Stephen J. Vitola
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Telephone: (212) 819-8200

Dated:  October 9, 2007

Frederick L. Cottrell III (#2555)
cottrell@rlf.com
Anne Shea Gaza (#4093)
gaza@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2007, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Steven J. Balick, Esquire
> John G. Day, Esquire
> Lauren E. Maguire, Esquire
> Ashby & Geddes
> 500 Delaware Avenue
> P.O. Box 1150
> Wilmington, DE  19899

I hereby certify that on October 16, 2007, I have sent by Federal Express the foregoing document to the following non-registered participants:

> Paul Berghoff, Esquire
> McDonnell Boehnen Hulbert
> & Berghoff LLP
> 300 South Wacker Drive
> Chicago, Illinois 60606-6709

Anne Shea Gaza (#4093)
Gaza@rlf.com